331 So.2d 186 (1976)
Virginia FIELDING, Plaintiff and Appellee,
v.
CASUALTY RECIPROCAL EXCHANGE, Defendant and Appellant.
No. 5362.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1976.
Rehearing Denied May 19, 1976.
Writ Refused July 1, 1976.
*187 Gold, Hall, Hammill & Little by Eugene J. Sues, Alexandria, for defendant and appellant.
Gahagan & Gahagan by Russell E. Gahagen, Natchitoches, for plaintiff and appellee.
Before CULPEPPER, DOMENGEAUX, WATSON, GUIDRY and PAVY, JJ.
CULPEPPER, Judge.
This is a suit for damages arising out of an automobile accident. The plaintiff, Virginia Fielding, was injured while a passenger in her own automobile, which was being driven by Clyde Allen. He was using plaintiff's automobile while his pickup truck was in a shop for repairs. The defendant, Casualty Reciprocal Exchange, is the insurer of Allen's truck. Plaintiff contends that under the "temporary substitute automobile" provisions of Allen's policy, he was covered while driving plaintiff's vehicle. The trial judge found coverage and rendered judgment for the plaintiff in the sum of $6,885.23. Defendant appealed.
The sole issue for our determination is whether the plaintiff was a "resident of the same household" as Allen, in which event there would be no coverage of Allen while driving plaintiff's automobile.
*188 The accident occurred on January 31, 1975. Allen attempted a left turn from the highway and entered the path of an oncoming vehicle, thus negligently causing the accident.
The automobile being driven by Allen was a 1964 Ford stationwagon, which had been purchased by him the week before and given to plaintiff. She was listed on the title as the registered owner.
At the time of the accident, Clyde Allen was the owner of a 1968 Chevrolet pickup truck, which was insured under a liability policy issued by defendant, Casualty Reciprocal Exchange. This policy provides liability coverage to Allen while driving "an owned automobile or a temporary substitute automobile." The policy defines "owned automobile" as one owned by the same insured (Allen) and described in the policy. A "temporary substitute automobile" is defined in the policy as follows:
"`temporary substitute automobile' means an automobile not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an owned automobile when withdrawn from normal use for servicing or repair or because of its breakdown, loss, or destruction."
Plaintiff contends that since Allen's truck had been withdrawn from normal use for repairs, and the stationwagon was being used by him temporarily with the permission of the owner as a substitute for the "owned automobile", that Allen was insured under defendant's policy. Defendant contends plaintiff was a "resident of the same household" as Clyde Allen, the named insured, and that therefore the "temporary substitute automobile" provision of the policy is inapplicable to this case.
In a suit on an insurance contract the burden is on the plaintiff to prove every fact essential to show that his claim is within the coverage provided by the policy. Talazac v. Phoenix of Hartford Insurance Company, 259 So.2d 636 (4th Cir., La.App., 1972). Thus, in this case plaintiff must prove (1) that the automobile involved in the accident was not owned by the named insured (Clyed W. Allen), (2) that it was temporarily used with the permission of the owner, (3) that it was a substitute for an owned automobile withdrawn because of repair or loss and (4) that the automobile was not owned by a resident of the same household as the named insured. The evidence clearly proves the first three of these requirements. The only issue is as to the fourth.
It should first be noted that the term "residence" is not synonymous with "domicile", though the two terms are closely related. A person may have only one legal domicile at the same time, but he may have more than one residence. LSA-C.C. Article 38; Manuel v. American Employment Insurance Company, 228 So.2d 321 (3rd Cir., La.App., 1969); LaFluer v. Seaboard Fire & Marine Insurance Company, 296 So.2d 860 (3rd Cir., La.App., 1974), writ refused 300 So.2d 185 (La.1974).
"Resident" is defined in Webster's Third New International Dictionary, 1966 as "one who dwells in a place for a period of some duration." However, "[w]hether a person is or is not a resident of a particular place is a question of law as well as fact, and is to be determined from all of the facts of each particular case . . ." Ladner v. Andrews, 216 So.2d 365 (3rd Cir., La.App., 1968); Taylor v. State Farm Mutual Automobile Insurance Company, 248 La. 246, 178 So.2d 238 (1965).
"The question is one largely of intention, and the intention of a person, in that respect, is determined by his expressions thereof at times not suspicious, and his testimony, when called on, considered in connection with his conduct and the circumstances of his life." Stavis v. Engler, 202 So.2d 672 (4th Cir., La.App., 1967).
*189 While these jurisprudential guides may aid us in a final determination of the instant litigation, we must not lose sight of the fact that we are dealing with a term in a contract. Thus, the interpretation and meaning of the term "resident" in this case should be construed in accordance with those provisions of our law particularly applicable to construction of contracts. LSA-C.C. Article 1945 provides in part as to interpretation of agreements "* * * that the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences * * *." Article 1946 provides: "The words of a contract are to be understood like those of a law, in the common and usual signification, without attending so much to grammatical rules as to general and popular use." Taylor v. State Farm Mutual Automobile Insurance Company, supra.
The testimony of plaintiff and her witnesses is vague and contradictory as to her residence. She had been married three or four times and had lived with several other men. She had lived in Pueblo, Colorado, in Baltimore, Maryland, and in Jonesboro, Winnfield, Shreveport, Robeline and Natchitoches, Louisiana more recently. When asked at the trial for her address, she stated she did not have one.
In a pretrial deposition she stated that though she sometimes went by "Virginia Allen", she got that name from living with a "Willie Allen" in Winnfield. She stated she spent some nights with Clyde Allen and kept a change of clothes there but did not live with him. She said that at the time of the accident she was living with her cousin, Shirley. Later in the deposition, however, she stated that at the time of the accident she was living at her brother's girlfriend's house in Robeline.
At the trial she reiterated most of this testimony but admitted that sometimes she would live a week or two with Clyde. She stated her clothes were in Natchitoches at her brother's house at 833½ Third Street, but that some were also scattered in "Jonesboro, Winnfield and everywhere else."
Clyde Allen testified at the trial that plaintiff lived with her brother at the time of the accident. Plaintiff said she kept some clothes at her brother's home on Third Street in Natchitoches, but that she also kept some clothes at other places. She said that she and Clyde Allen never held themselves out as husband and wife, and that she was not a resident of his household. However, both she and Allen admitted she went by the name of "Allen."
Dr. Archie Breazeale, Jr., plaintiff's personal physician, testified that his office records indicate that plaintiff was married and that she and Clyde Allen had a joint account with him. In the medical history he elicited from plaintiff following the accident is contained the statement that plaintiff was injured in an accident while riding in an automobile driven by her husband. That history also contains the entry that Clyde Allen was plaintiff's husband. Additionally, Dr. Breazeale testified that the admission records of the hospital indicated that plaintiff had named Clyde Allen as her husband. The record contains a stipulation as to this point and additionally plaintiff testified that she "possibly" said at the hospital she was married to Clyde, but that the purpose of that was to take advantage of the "spouse provisions" of Clyde Allen's health and accident insurance.
Plaintiff also gave Dr. Dean, the Shreveport doctor to whom she was referred after the accident, her address as being the same as that of Clyde Allen.
Trooper Ira T. Chambers, who investigated the accident, testified that Clyde told him that his "wife" was riding with him. He said that Clyde later confided to him that the two were living together. Also, his accident report contains the same address for both Clyde Allen and plaintiff.
*190 The manager of the Natchitoches A&P Store, where plaintiff had worked, testified that his company's "personnel card" gave plaintiff's address as 327 Buard in Natchitoches (Clyde's address). That card also contained her phone number as that of Clyde. An A&P "separation notice" was produced upon which was noted that plaintiff was married and lived at 327 Buard Street. Additionally, the manager of the store's meat market in which department plaintiff had worked stated that whenever he needed to get in touch with the plaintiff he would call Clyde Allen's number.
It was also stipulated at trial that if called to testify, Ryan Horton, Clyde Allen's landlord would testify that when he arrived to collect the rent on a "couple of occasions", plaintiff was present at Clyde's house.
Finally, plaintiff's driver's license shows her name as "Allen", and her address the same as that of Clyde. Additionally, the title to her car, which was involved in the accident, shows her address as 327 Buard Street in Natchitoches, i.e., Clyde Allen's address.
As circumstantial evidence of plaintiff's residence, we also note that on December 22, 1974 and on January 30, 1975, plaintiff placed two calls to her son in Colorado from Clyde Allen's phone. Plaintiff also admitted that she received mail at Clyde's business address, 520 Amulet Street in Natchitoches, and that in fact that was the only place where she did receive mail.
We note that while plaintiff contends she in fact lived with her brother at the time of the accident, she did not call her brother as a witness. Also, she contends the reason for her last name being "Allen" is that she had once lived with a "Willie Allen", but he was not called by her to testify at the trial. Where the testimony of a person seeking to establish a claim has been put in doubt but it is susceptible of corroboration, the failure to call available witnesses who allegedly possess knowledge of the disputed relevant facts, may be considered in evaluating that person's credibility. Messex v. Georgia-Pacific Corporation, 293 So.2d 615 (3rd Cir., La.App., 1974).
In summary, the evidence indicates that plaintiff had several places at which to stay. She could choose any one of them at any time and she apparently had clothes at all places so that any of them would be "home" to her. It is clear that she was welcome at Clyde's at any time and for any period and that, in fact, she spent the majority of her time at the home of Clyde. If she had any semblance of a permanent home, Clyde's residence was it.
To be considered a resident of a particular place, it is only necessary that a person "maintain such a relation with the place or premises so selected as will entitle him at his will and without making new arrangements therefor upon each return, to occupy such place whenever his necessities or pleasure require, this without having to ask permission of some one else." Hall v. Godchaux, 149 La. 733, 90 So. 145 (1921).
We therefore find plaintiff to have been a resident of the household of the named insured, Clyde Allen, and thus find the policy of insurance issued by defendant does not provide coverage for the accident herein sued upon. Thus, we find it unnecessary to reach the question posed by appellant of whether the automobile was in the care, custody and control of the insured under the exclusion provided in defendant's policy.
For the reasons assigned, the decision of the district court is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of defendant, Casualty Reciprocal Exchange, and against the plaintiff dismissing this suit at her cost. All costs of this appeal are to be paid by plaintiff-appellee.
REVERSED AND RENDERED.
*191 DOMENGEAUX, J., dissents and assigns written reasons.
WATSON, J., dissents for the reasons assigned by DOMENGEAUX, J.
DOMENGEAUX, Judge (dissenting).
I suggest that the judgment of the trial court should be affirmed for either or both of the following reasons:
1. Ambiguity of the word "resident" as elucidated upon in the case of Vinet v. Hano, 281 So.2d 183 (La.App., 4th Cir., 1973).
In the event no ambiguity exists, thus eliminating the requirement of an interpretation of the policy provisions adverse to the defendant-insurer, the determination should be based upon:
2. Affirmation of a fact and credibility finding. I submit respectfully that this fact and credibility reversal violates the well known and jurisprudentially entrenched rules of appellate review on the subject so clearly set out and mandated in Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Admittedly there are circumstances which suggest that the plaintiff resided at Clyde Allen's residence, but it is evident that the trial judge didn't think so. He said:
"To say the least, the plaintiff's conduct and her personal affairs would not be the model of decorum, but this Court is not called upon to judge her morals but to determine whether or not she is a resident of Clyde W. Allen's household as of January 31, 1975.
The Court finds that Mrs. Fielding's domicile or household was 833 1/3 Third Street on January 31, 1975." (That address is the apartment of plaintiff's brother.)
There is no question that plaintiff participated in trysts with Clyde Allen at his residence at 327 Buard Street. This does not establish residence. Plaintiff was going out with three or four and possibly five other men during the time that she was supposed to be living with Clyde Allen. Mr. Allen knew this. The trial judge obviously considered this in concluding that plaintiff was not a resident of Clyde Allen's household.
Plaintiff, Clyde Allen and Faye Movan testified that plaintiff was residing in the apartment with her brother. No one testified otherwise except by innuendo.
Mr. Blake, husband of plaintiff's sister, knew Clyde Allen for years; he visited his home during the Christmas Holidays; plaintiff was there, but Blake testified that there was no indication that she was living there. It was his information that plaintiff was residing at her brother's apartment, as found by the trial judge.
There is evidence that plaintiff formerly lived with one "Willie" Allen and started using the last name "Allen". This was long before her association with Clyde Allen. It is not unreasonable to conclude that Doctor Breazeale thought that she was Clyde's wife, in that she called herself Virginia Allen.
The majority concludes that the testimony of plaintiff and Clyde Allen is unsatisfactory. The cold record may so indicate, but the district judge felt otherwise. Can we say that they lied when the trial judge obviously didn't think so?
The trial judge considered all of the circumstances and testimony and made a factual determination, a credibility holding. We shouldn't reverse by second guessing him. There are too many variables in this case to reverse.
After reviewing the complete record and considering all of the evidence, I cannot say that the trial judge erred manifestly in finding that plaintiff was "not moved in" with Clyde Allen at the time of the accident.
I respectfully dissent.