584 So.2d 1192 (1991)
Lee MARTIN, Plaintiff-Appellee,
v.
Ferriel T. WILLIS & Odell S. Willis, Defendant-Appellant.
No. 22596-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1991.
Rehearing Denied September 19, 1991.
*1193 Andrus & Doherty by James P. Doherty, Jr., Opelousas, for Imperial Lloyds Ins. Co.
Sandoz, Sandoz & Schiff by Anne E. Watson, Opelousas, for Odell S. Willis.
North Louisiana Legal Assistance Corp. by John T. Genova, Monroe, for Ferriel T. Willis.
Donald & Gates by M. Randall Donald, Monroe, for Lee Martin.
Before VICTORY, BROWN and STEWART, JJ.
VICTORY, Judge.
This case arises out of an automobile accident. The insurer cast in judgment appeals, contending the trial judge erred in rulings of coverage, and alternatively, quantum. We reverse and render judgment in the insurer's favor.

FACTS
While driving his truck on December 17, 1986, Lee Martin was struck from the rear by a 1976 Ford Granada driven by Odell Willis (Odell) and owned by her major son, Ferriel Willis (Ferriel). Ferriel had his Ford Granada insured for liability with Imperial Lloyd's Insurance Company (Imperial Lloyds) until shortly before the accident, but the policy was cancelled for nonpayment of the premium. Odell and Clifford White, owned a 1972 Oldsmobile 98 that was insured under another policy issued by Imperial Lloyds and in effect at the time of the accident. Her testimony indicated the Oldsmobile was in the shop having brake work done, so she drove her son's Granada that was parked at her house.
Martin filed suit against Odell, Ferriel, Imperial Lloyds, and Allstate Insurance Company, his own UM carrier. He subsequently settled with Allstate.
Following trial, the judge found (1) Odell was completely at fault in causing the accident, (2) Ferriel's policy had been cancelled for nonpayment before the accident, (3) Ferriel was not a resident of Odell's household so the substitute vehicle exclusion did not apply in the case, and (4) the exclusion relied on by Imperial Lloyds insuring the 1972 Oldsmobile was contrary to public policy and, therefore, unenforceable in any event. The court awarded Martin $25,000 in general damages, $2,381.02 in current medical expenses and $5,000.00 in future medical expenses.
Only Imperial Lloyds has appealed, claiming coverage was excluded under its policy issued on the 1972 Oldsmobile and, alternatively, the monetary awards are excessive.

RESIDENCY
We first consider whether the trial court erred in finding Ferriel Willis was not a "resident" of Odell Willis' household. The Imperial Lloyds policy states:
We insure a substitute car when any car described on the declarations page can not be used because it is being serviced or repaired, or it has been stolen or destroyed. A car owned by you or a resident member of your family does not qualify as a substitute car.

*1194 We insure other cars you use with the permission of the owner, but not for collision or comprehensive insurance. We do not insure other cars owned by, or furnished for the regular use of you or resident members of your family.
The policy does not define "resident." However, Louisiana courts have been presented with the issue of residency many times. It is clear that a child need not be under his parents' roof at all times to be considered a resident of their household. Taylor v. State Farm Mutual Auto Ins. Co., 248 La. 246, 178 So.2d 238 (1965). Unlike domicile, one may have more than one residence. Gowins v. Gowins, 466 So.2d 32 (La.1985), Succession of Barnes, 490 So.2d 630 (La.App. 2d Cir.1986).
Generally, the cases hold children, even though majors, remain residents of their parents' household if they maintain temporary residences elsewhere. See McKenzie and Johnson on Insurance, 15 La.Civil Law Treatise § 46. In Bond v. Commercial Union Insurance Co., 407 So.2d 401 (La.1981), the court held a 31-year-old, divorced man who worked offshore remained a resident of his father's household in Alexandria, even though he maintained a separate apartment in Lafayette. He kept most of his personal items at his father's residence, had a key to the house, and lived with his father when not on call in Lafayette. Further, he had bank accounts, held church membership, and received mail there.
In Earl v. Commercial Union Insurance Co., 391 So.2d 934 (La.App. 2d Cir. 1980) a daughter, temporarily employed in Houston for four months where she lived with a cousin, was held to be a resident of her father's household for purposes of UM coverage because she kept her belongings there, returned to the home three times during the four month period, and intended to return permanently.
In Fielding v. Casualty Reciprocal Exchange, 331 So.2d 186 (La.App. 3d Cir. 1976), writ denied, 334 So.2d 217, the court was faced solely with the issue of residency in the context of a substitute vehicle clause virtually identical to the one here. There, Mr. Allen, driving a borrowed vehicle while his was being repaired, had an accident and plaintiff, a female passenger, was injured. The issue of coverage turned on whether plaintiff was a resident of Allen's household for purposes of the substitute vehicle clause. While some evidence indicated the two were married, they both denied it. Plaintiff testified she had no real home and gave herself no permanent address, but stayed in several places, and kept clothes in each place. The court stated any one of the places would be "home" to her, but it was clear Mr. Allen's residence was where she spent the majority of her time. The court stated that for a person to be considered a resident of a particular place, it is only necessary that he maintain such a relationship with the place as will entitle him at his will and without making new arrangements on each return, to occupy the place without having to ask permission.
In this case, the basic facts concerning the issue of residency are undisputed. Odell testified her son, Ferriel, had lived with her for the past 15 years. She stated he had been in Dallas for three weeks before the accident taking care of personal business and looking for a job. He returned to Monroe shortly after the accident, but went back to Dallas for about a month before returning home to Monroe. She testified that neither before nor after the accident did Ferriel have the intention of moving to Dallas, but speculated that if he had found a job there, he might have stayed.
Ferriel's testimony closely tracks his mother's. He was living in Monroe with his mother, but was in Dallas on personal business concerning his father's death when the accident occurred. While in Dallas he stayed with his brother and sister-in-law. He looked for a job, and then took a temporary job at a computer center, but stated he had no intent to stay. He worked at the computer center for a month and two days, and returned to Monroe to check on the accident and his mail. After checking on the accident, he then went back to Dallas, staying for two to three weeks doing yard work with his brother. He then *1195 returned to Monroe to his mother's house and was living there at the time of trial, over three years later.
The testimony of Ferriel and his mother reveals they considered him a resident of her household. He intended to reside at his mother's residence as evidenced by the fact that he kept the majority of his personal belongings there, continued to receive his mail there, was registered to vote there, and left his car and car keys there. For 15 years he had lived there continuously, leaving only for a few weeks to take care of some personal business after his father's death.
The trial judge held that Ferriel was not a resident of his mother's household at the time of the accident stating "... the court is of the opinion that he intended or would have remained in Dallas if he had found suitable employment." However, when Ferriel Willis was on the witness stand, the trial judge sustained a defense objection as speculative to the question: "If you could have found a steady job there, would you have stayed in Dallas"? Tr. 210-211.
We conclude that the trial court was manifestly erroneous in holding Ferriel Willis was not a resident of his mother's household. Speculating that he might have remained in Dallas when he returned there after the accident if he had obtained a good job, has little bearing on his residency at the time of the accident. He was only in Dallas temporarily, never obtained a suitable job, and returned to the home where he had lived for over 15 years after only a few weeks in Dallas. The undisputed facts clearly show Ferriel was a resident of his mother's household at the time of the accident.
Since Ferriel was a resident member of Odell Willis' family at the time of the accident, his car does not qualify as a substitute vehicle because it was owned by a resident member of the insured's family. Thus, the Imperial Lloyds policy issued to Odell and her husband did not provide coverage for the accident.

PUBLIC POLICY ISSUE
The trial judge held the substitute vehicle exclusion violated public policy, a finding that Imperial Lloyds urges is error.
In Fields v. Western Preferred Casualty Co. 437 So.2d 344 (La.App. 2d Cir.1983), writs denied, 440 So.2d 528 and 440 So.2d 754, relied on by the trial judge, a vehicle owner purchased automobile liability insurance, but obtained a specific exclusion of an employee with a bad driving record. The excluded employee then had a wreck. The court held the provisions of the Compulsory Motor Vehicle Liability Security Law and the statutory omnibus coverage provision override or supercede a policy provision or endorsement excluding a named driver.
The trial court's reliance on Fields was misplaced. The rationale in Fields is applicable if the vehicle owner purchases liability insurance covering those using the car with his permission. The instant case presents a different factual situation. Here, Odell Willis seeks to be covered under her policy with Imperial Lloyds while operating her son's car. The relevant statute is LSA-R.S. 32:900 C which provides:
Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.
(Emphasis added.)
The statute does not purport to extend statutorily mandated coverage when the vehicle being driven is another vehicle that the operator already owns. Couch on Insurance 2d (Rev ed) § 45:235, in discussing this substitute vehicle exclusion, states: "to hold otherwise would be to permit the operator of more than one truck to insure only one vehicle and, in the event of an accident with any of his vehicles, take the position that the policy covered the vehicle involved in the accident."
*1196 The Imperial Lloyds policy on the 1972 Oldsmobile, while generally covering Odell Willis when she drove other people's cars with their permission, excluded coverage when Odell was driving other cars owned by, or furnished for the regular use of, Odell or resident members of her family. Other cars owned by family resident members must be covered by another policy, and a premium paid for such coverage. Indeed, the facts of this case show Ferriel's car was covered by another Imperial Lloyds policy until shortly before the accident.
In Chon v. Allstate Insurance Co., 522 So.2d 690 (La.App. 5th Cir.1988), Mr. Weil, owner of a car insured by Allstate, had an accident while driving a car owned by Mrs. Chapeaux, with whom he had lived for the past three months. Chapeaux had given Weil permission to use the car on this occasion because his car was being repaired. The court held the Chapeaux's car was available for Weil's regular use, and, therefore, Allstate's policy did not extend coverage because of the exclusion providing operators are not insured when driving "owned" cars, and further defining an "owned" car to include one available for the operator's regular use. See also Lemoine v. Herrmann, 559 So.2d 898 (La.App. 4th Cir.1990).
Rejecting plaintiff's demands the court in Crockett v. Collins, 308 So.2d 391 (La.App. 1st Cir.1975), stated:
Plaintiffs would have us hold that an insurer becomes an insurer of all owned automobiles simply by issuing a policy of one specifically described owned automobile. We do not believe that this was the purpose or the intent of the Financial Responsibility Law. We do not believe that the insurer should be so burdened.
In McKenzie and Johnson on Insurance, 15 La.Civil Law Treatise § 63, discussing coverage of vehicles already owned by the insured, the writers state: "Louisiana courts recognize that the intent of the policy in excluding certain vehicles from coverage is to prevent coverage without payment of premiums for vehicles owned by or furnished for the regular use of insureds."
Anita Swallow, head underwriter for Imperial Lloyds, testified that, prior to the accident, a policy had been issued to Ferriel Willis for his 1976 Granada, but the policy was terminated in the late fall of 1986 when he failed to pay the premium. The trial court so held. Yet, the trial court's ruling that the exclusion at issue violates Louisiana's public policy would mean Imperial Lloyds would be forced to cover Ferriel's vehicle (on which it had recently cancelled coverage for nonpayment) without receiving a premium for coverage. We hold the trial judge was in error when he ruled the exclusion at issue violated the public policy of this state.

CONCLUSION
In summary, we reverse the trial court and hold that Ferriel Willis was a resident of Odell Willis' household at the time of the accident, the Imperial Lloyds policy issued on the 1972 Oldsmobile excluded coverage for the accident, and the exclusion did not violate public policy. Due to these rulings, Imperial Lloyds alternative argument that the monetary awards were excessive is moot.[1]

DECREE
The judgment insofar as it is rendered against Imperial Lloyds is reversed, and all claims against them are dismissed. Costs are assessed to Odell S. Willis.
REVERSED.
BROWN, J., concurs.
BROWN, Judge, concurring.
At the time of this accident Ferriel Willis was in Dallas looking for employment; however, his uninsured vehicle remained *1197 with his mother. Ferriel's vehicle had been insured by the same company as his mother's vehicle but cancelled due to nonpayment. Being unsuccessful in finding employment, Ferriel returned to live with his mother. Initially, I agreed with the trial court's finding that Ferriel was not a resident of his mother's home at the time of the accident, but under the total circumstances of this case, I reluctantly concur with the majority.

APPLICATION FOR REHEARING
Before MARVIN, HIGHTOWER, VICTORY, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] In her brief, Odell Willis also argues the damage award is excessive. However, she has not appealed or answered the appeal of Imperial Lloyds. See LSA-C.C.P. Art. 2121 and Ralston Purina Co. v. Pelican State Seed Co., 493 So.2d 922 (La.App. 3d Cir.1986), holding that one defendant's appeal necessarily brings up the question of the other defendant's liability only to the extent necessary to decide the first appeal.