I,KUHN, Judge.
This appeal presents a res nova issue interpreting Louisiana’s anti-stacking law: when an insured sustains injury while operating a leased vehicle, which is a “temporary substitute automobile” for one of the insured’s “owned” automobiles, is the insured allowed to stack the UM coverage of another policy issued to the insured on a different “owned” vehicle? In this instance, the trial court concluded stacking is allowed, based on the statutory exception in La. R.S. 22:1406(D)(l)(e). We affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff, Nadine Gray, filed suit against defendant, Louisiana Farm Bureau Casualty Insurance Company (“Farm Bureau”)[1] , alleging she is entitled to compensation under a policy issued to her by Farm Bureau, which provides uninsured/underin-sured motorist (“UM”) coverage.
In it appellate brief, Farm Bureau presented the following facts in its statement of the case, in which plaintiff has acquiesced:
[0]n May 30, 1996 ... Gray was operating a 1996 Nissan Maxima automobile, owned by Enterprise Leasing Company of New' Orleans, which was involved in a collision with another vehicle [driven by Melissa Morvant]....
*1052 At the time of the accident ... Gray owned two (2) automobiles insured under separate policies of automobile liability insurance issued to her by [Farm Bureau]. One of the policies, Policy No. A 866306, provided coverage relating to the use of a 1988 Nissan Maxima automobile, described in the policy declarations. The other policy, Policy No. A 529098, provided coverage relating to the use of a separate described automobile, a 1995 Mazda Protégé automobile.
The automobile being operated by Ms. Gray at the time of the accident was a temporary substitute automobile for her 1988 Maxima automobile, which was undergoing repairs relating to a recall program of its manufacturer. The Nissan dealership arranged for Ms. Gray to lease the automobile as a temporary substitute automobile while her automobile was undergoing the repairs. The owner of the leased automobile, Enterprise ..., | aoffered Ms. Gray the option of acquiring liability insurance related to its use. She declined that offer of insurance. ...
On December 19, 1997, Ms. Gray settled her claim against [Morvant and Morvant’s liability insurer] for the amount of the policy limits of that insurer. On December 23, 1997, Ms. Gray settled her claims against ... [Farm Bureau] for the limits of the [UM] coverage of its Policy No. A 366306, reserving her rights to make a claim under defendant’s Policy No. A 529093.
Thereafter, Gray filed this suit claiming she is entitled to stack the two UM policies issued by Farm Bureau. Thus, Gray asserts she is entitled to compensation pursuant to the provisions of policy number A 529093, the policy providing coverage on the 1995 Mazda Protégé.[2] Farm Bureau answered, denying Gray’s claims. Gray filed a motion for summary judgment, praying for a judgment declaring she is entitled to UM coverage under Farm Bureau policy number A 529093. Following a hearing, the trial court granted Gray’s motion. On November 6, 1998, a judgment was signed ordering judgment in favor of Gray and against Farm Bureau on the issue of insurance coverage, decreeing that Gray is entitled to assert claims under the UM coverage of both policies issued by Farm Bureau.[3] Farm Bureau has appealed.
Farm Bureau asserts the trial court erred in finding that a “temporary substitute automobile” was an “automobile not owned by” Gray within the meaning of La. R.S. 22:1406(D)(1)(c)(ii), which sets forth an exception to the anti-stacking provision of La. R.S. 22:1406(D)(1)(c)(i). Alternatively, Farm Bureau argues that the court erred in finding that this limited exception to the anti-stacking provision was applicable, because “no primary [UM] coverage existed on the non-owned automobile being used as a ‘temporary substitute automobile.’ ” Farm Bureau also urges that the trial court’s | ¿judgment is contrary to the legislative intent expressed in the anti-stacking provision of La. R.S. 22:1406(D)(1)(c).
II. ANALYSIS
With one exception, Louisiana’s anti-stacking statute prohibits insureds from combining or stacking UM benefits either interpolicy or intrapolicy. Louisiana Revised Statute 22:1406(D) provides, in pertinent part:
(l)(c)(i) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(l), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of *1053 insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
(ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the following priorities of recovery under uninsured motorist coverage shall apply:
(aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
Thus, under the first paragraph of the statute, an insured with insurance available to him under more than one UM policy is limited to recovery under one policy and may not combine or stack the coverage provided under those policies. Under the second paragraph, an exception to the stacking prohibition is permitted if: (1) the injured party is occupying an automobile not owned by him; (2) the UM coverage on the vehicle in which the injured party was an occupant is primary; and (3) the primary UM coverage is exhausted due to the extent of damages. In that instance, the other uninsured motorist | ^coverage available to the injured occupant is considered as excess insurance, under which the injured occupant may recover. Boullt v. State Farm Mut. Auto. Ins. Co., 99-0942, p. 3 (La.10/19/99), 752 So.2d 739; Nall v. State Farm Mut. Auto. Ins. Co., 406 So.2d 216, 218 (La.1981). Where no primary coverage exists on the vehicle occupied by the injured party, the exception to the stacking prohibition does not apply. Senegal v. Faul, 598 So.2d 686, 689 (La.App. 3d Cir.), writ denied, 604 So.2d 965 (La.1992).
The Farm Bureau policies each contained the following pertinent language:
PART IV-PROTECTION AGAINST UNINSURED MOTORISTS Uninsured Motorists (Damages for Bodily Injury)
[Farm Bureau agrees t]o pay all sums which the insured ... shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease ... sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninusred (sic) automobile ....
[[Image here]]
Definitions
The definitions under Part I, except the definition of “insured” apply to Part IV, and under Part IV:
“insured” means:
(a) the named insured ....
(b) any other person while occupying an insured automobile; and
[[Image here]]
“insured automobile”
(a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded.
(b) a private passenger, farm or utility automobile, ownership of which is acquired by the named insured during the policy period ....
(c) a temporary substitute automobile for an insured automobile as defined in (a) or (b) above and
*1054 lfi(d) a non-owned automobile while being operated by the named insured
[[Image here]]
[[Image here]]
OTHER DEFINITIONS
[[Image here]]
“Automobile” unless specifically stated to the contrary, means the motor vehicle ... described in this policy_Auto-mobile also means, in so far as non-owned automobile, temporary substitute automobile and newly acquired automobiles are concerned, a land type, four wheel, private passenger, station wagon, farm truck or jeep type vehicle.
[[Image here]]
TEMPORARY USE OF SUBSTITUTE AUTOMOBILES
While the described automobile is withdrawn from use, such insurance as is afforded by this policy applies to another automobile not owned by or furnished for regular use of the named insured or spouse, or member of same household, while temporarily used as the substitute for such automobile. This insuring agreement does not cover as an insured the owner of the substitute automobile or any employee of such owner.
At the time of the accident, Gray occupied the 1996 Nissan Maxima, a vehicle that was owned by Enterprise and was leased to Gray. Gray clearly had no ownership interest in this vehicle. The parties agree the vehicle was being used as a “temporary substitute automobile” under the terms of the Farm Bureau policy. Farm Bureau argues that under the terms of the policy language, the “temporary substitute automobile” is treated as the equivalent of the 1988 Nissan Maxima, the automobile owned by Gray and described in policy number A 366306. Thus, Farm Bureau asserts that the 1996 Nissan Maxi-ma should not be considered “an automobile not owned by [the] injured party,” for purposes of the exception to the anti-stacking provision. Farm Bureau argues that the trial court has committed error by giving a literal interpretation to the policy term “non-owned automobile,” rather than giving an interpretation which reflects the intent of the legislature to limit stacking of UM coverages.
|7Although the language of policy number A. 366306 provides that the same type of coverage provided to the “described automobile” is applicable to a “temporary substitute automobile,” the policy does not define a “temporary substitute automobile” as an “owned automobile.” The policy does not otherwise specify that the “temporary substitute automobile” will be treated as an “owned automobile” for the purpose of applying Louisiana’s anti-stacking law. As such, the policy does not classify the “temporary substitute automobile” as an “owned automobile.” To the contrary, the policy language creates separate and distinct categories for “owned automobiles” and “temporary substitute automobiles.” Accordingly, we agree with the trial court’s classification of the “temporary substitute automobile” as “an automobile not owned by [Gray]” within the meaning of La. R.S. 22:1406(D)(l)(c).
Farm Bureau also argues that Gray should not be allowed to stack the two Farm Bureau policies because there was no primary UM coverage on the 1996 Nissan Maxima; Farm Bureau argues that because Gray rejected Enterprise’s offer to provide additional liability insurance on the leased vehicle, there was no underlying primary UM coverage. The trial court rejected this argument, and we also reject it. Primary coverage is the coverage which is applicable to the vehicle in which the person was injured. If, however, that vehicle has more than one UM policy on it, then for purposes of the statute, all such policies are primary. Pardue v. Dean, 515 So.2d 543, 544-545 (La.App. 1st Cir.1987); Capone v. King, 467 So.2d 574, 579-580 (La.App. 5th Cir.1985); writs denied, 468 So.2d 1203, 1205. Thus, had Gray opted to *1055 purchase additional coverage on the leased vehicle through Enterprise, that coverage would have been categorized as “primary,” along with the UM coverage provided under Farm Bureau policy number A 366306. Gray’s action of declining the additional coverage had no effect on the classification of the UM coverage provided by policy number A 366306 as “primary.”
1 sApplying the literal language of the statutory exception to the facts of this case, Gray was occupying a vehicle which she did not own at the time of the accident, and the coverage provided to the 1996 Nissan Maxima under Farm Bureau policy number A 366306 was “primary.” Pursuant to La. R.S. 22:1406(D)(1)(c)(ii)(bb), if the primary UM coverage afforded to Gray under policy number A 366306 is exhausted due to the extent of her damages, she may recover as excess from the other UM coverage available to her under policy number A 529093. Thus, a strict reading of the anti-stacking law allows Gray to stack the two Farm Bureau policies.
The letter of the law which allows Gray to stack these two policies may not be disregarded based on a simple assertion that the legislative spirit behind the statute is to prevent stacking in a situation such as the one presented. If the legislature intended that a different result be reached, it should amend the anti-stacking law to specifically prohibit stacking when the injured party is occupying a “temporary substitute automobile.” See Courville v. State Farm Mut. Auto. Ins. Co., 393 So.2d 703 (La.1981).
III. CONCLUSION
For the above reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed against defendant-appellant, Louisiana Farm Bureau Casualty Insurance Company.
AFFIRMED.

. The petition incorrectly refers to defendant as "Farm Bureau Insurance Company.”

. The policy limits for the UM coverage provided by each Farm Bureau policy was $10,000.00 for each person and $20,000.00 for each accident.

. The judgment was also designated as a final appealable judgment. See La. C.C.P. art. 1915(B).