996 So.2d 1 (2008)
Scott SEYMOUR
v.
The ESTATE OF Leah KARP and Pacific Insurance Company.
Edward W. Karp, Individually and on Behalf of His Minor Son, Benjamin Karp
v.
Scott Seymour, Occidental Chemical Corporation, Louisiana Power & Light Company, New Orleans Public Service Inc., State Farm Insurance Company, St. Paul Fire & Marine Insurance Company, Central Mutual Insurance Company, et al.
Nos. 2005-CA-1382, 2005-CA-1383.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 2008.
*2 Steven J. Koehler, the Koehler Firm, Metairie, LA, David Fine, New Orleans, LA, for Edward Karp and Benjamin Karp.
H.F. Foster, III, David E. Walle, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, for Central Mutual Insurance Company.
Elizabeth S. Cordes, Robert E. Peyton, Christovich & Kearney, L.L.P., New Orleans, LA, for Central Mutual Insurance Company as Alleged Liability Insurer of Leah Karp.
Thomas E. Loehn, Boggs, Loehn & Rodrigue, Metairie, LA, for St. Paul Fire & Marine Insurance Company.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and Judge MAX N. TOBIAS, JR.).
JOAN BERNARD ARMSTRONG, Chief Judge.
Plaintiffs-appellants, Edward Karp, individually and on behalf of his minor child, Benjamin Karp, appeal a judgment of April 6, 2005, granting two summary judgment motions of one of the defendants, the appellee, Central Mutual Insurance Company ("CMIC") dismissing with prejudice all claims by all parties against CMIC.
This case arises out of an automobile collision which occurred at 8:00 a.m. on March 30, 1990 in Orleans Parish. The plaintiffs' original petition alleges that the accident was caused by a malfunctioning traffic signal at the intersection of Wisner Boulevard and Filmore Avenue. The petition alleges that the defendant, Occidental Chemical Corporation negligently caused a power outage which led to a chain reaction of power transmission events resulting in the malfunctioning traffic signal. Mr. Karp's wife, Leah, was severely injured and died shortly after being transported to the hospital from the accident scene. Their minor son, Benjamin, was severely injured, but survived. Mr. Karp filed a survival action arising out of Leah's injuries along with a wrongful death claim. He included a claim on behalf of Benjamin Karp for his own personal injuries as well as a survival and wrongful death actions arising out of his mother's death. Named as defendants were the decedent and the driver of the other vehicle, Scott Seymour, as well as certain other defendants for their alleged negligence in connection with the power outage resulting in the malfunctioning traffic signal.
The decedent was driving a vehicle owned by her parents. Their insurers, Pacific Indemnity Insurance Company and St. Paul Fire and Marine Insurance Company, were, therefore, named as defendants. The vehicle which the decedent was driving was struck by a vehicle driven *3 by the defendant, Mr. Scott Seymour. His insurer, State Farm has already settled for the policy limits of approximately $20,000.00. Mr. Karp was the named insured under a policy with CMIC that provided both automobile liability and UM coverage. The only vehicle listed on the CMIC policy was the Karp's family vehicle. CMIC, was sued in its capacity as the alleged personal liability insurer of the decedent and in its capacity as the alleged personal UM insurer of the decedent and her son. CMIC is represented by separate counsel in each capacity. Separate motions for summary judgment were filed on behalf of CMIC in both capacities and both were granted by the judgment that is now before this Court on appeal.
We review summary judgments de novo.

I. LIABILITY COVERAGE
CMIC argues that it did not provide liability coverage to the decedent because the decedent was driving a vehicle "furnished or available" for her "regular use" that was not listed on the declarations page of the policy. For that reason, CMIC contends that the vehicle she was driving was excluded from coverage; and that the trial court was correct in dismissing the claims against CMIC in its capacity as the decedent's liability insurer for the negligence of the decedent.
The policy relevant policy exclusion reads as follows:
EXCLUSIONS
B. We do not provide Liability Coverage for the ownership, maintenance, or use of:
* * *
2. Any vehicle, other than "your covered auto," which is
a. Owned by you; or
b. Furnished or available for your regular use.
"Your covered auto" is defined as: "Any vehicle shown in the Declarations." It is undisputed that the vehicle the decedent was driving was not "your covered auto."
"You" and "your" are defined in paragraph "A" of the definitions section of the policy as referring to:
1. The "named insured" [Mr. Karp] shown in the Declarations; and
2. The spouse [Mrs. Karp] if a resident of the same household.
Paragraph "A" of the "Insuring Agreement" describing liability coverage states in pertinent part that:
We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident....
Paragraph "B" of the "Insuring Agreement" provides in pertinent part that:
B. "Insured" as used in this Part means:
1. You [referring to Mr. Karp, the named insured, and including Mrs. Karp if a resident of the same household]or any "family member" for the ownership, maintenance or use of any auto or "trailer."
2. Any person using "your covered auto."
As the decedent was not using a "covered auto" under paragraph "B 2" of the "Insuring Agreement", at the time of the accident, then coverage must be found, if at all, under paragraph "B 1" of the "insuring Agreement" as the spouse or "family member" residing in the same household as the named insured, for the "use of any auto ..." We find that a genuine issue of fact exists as to the residence of Benjamin and the decedent as will hereinafter be explained in the second part of this opinion dealing with the question of UM coverage. *4 However, we find that the summary judgment dismissal of CMIC in its capacity as liability insurer of the decedent is still correct as a matter of law because the issue of fact as to residence is not material to the issue of liability coverage. The CMIC policy clearly and unambiguously excludes liability coverage on behalf of the decedent as she was driving a vehicle that was "furnished or available" to her for "regular use" that was not a "covered auto," regardless of residence.
In dismissing the claims against CMIC in its capacity as liability insurer, the trial court found that:
[T]here is no genuine issue of material fact regarding the unambiguous liability policy exclusion for the ownership, maintenance or use of "any vehicle, other than your covered auto' which is (a) owned by you; (b) furnished or available for your regular use.". Specifically, the Court concludes that the evidence that demonstrates that the car driven by Mrs. Karp was furnished or available for her regular use while residing temporarily with her parents. The Court cites Daniels versus Jenkins, 709 So.2d 362...
We agree:
Regular use does not mean exclusive use, and the policy does not require availability for exclusive use for the policy exclusion to apply.
Daniels v. Jenkins, 98-0285 (La.App. 4 Cir. 3/25/98), 709 So.2d 362, 364.
Thus, the issue is whether as matter of law, considering the undisputed facts, could the trial court find that the car in question was "furnished or available" for Mrs. Karp's "regular use" within the unambiguous meaning of the policy language.
The so-called "regular use" exclusion for non-owned autos is a typical and common policy provision. It relieves the insurance company of the unfair burden of insuring an automobile not listed in the policy which an insured uses regularly but for which the insured pays no premium. In other words, the regular use" exclusion prevents the insurance company from being exposed to a risk for which it is not compensated.
The plaintiffs contend that:
In all of the cases that have found that the car was provided for the regular use of the driver, the period of use was open ended, with no end date anticipated. * * * * The parties did not contemplate that the use of the vehicle would end anytime soon.
.... The unequivocal evidence is that Mrs. Karp was to have joined her husband in Indianapolis within a few days if she had not died in this accident.
We note that none of the cases cited by plaintiffs says that the time period must be "open ended, with no end date anticipated."
It is undisputed that the decedent and her son lived with her parents for almost five months in New Orleans from November of 1989 through March 29, 1990, the date of the fatal accident. The car which she was driving was an extra car in the household of her parents, the Goldmans, and she used it routinely to go to work and to take care of her son's needs. She had no other vehicle of her own. The Karp family vehicle, the only "covered auto" listed on the CMIC policy, was with her husband in Indiana.
We are not called upon to establish a bright line time period necessary to establish the "regular use" of a non-covered auto. It is sufficient that we state that the consistent, repetitive use of such an auto for a period in excess of four months is, under the facts of this case, as a matter of law, "regular use" as that term is used in the policy. The fact that such use may be *5 for a definite, finite term as opposed to an indefinite term of no fixed duration does not mean that the use cannot be considered to be "regular." In view of the purpose underlying such exclusion, we conclude that CMIC did not undertake to insure the decedent's regular use of this unlisted vehicle for such an extended period of time, a time period that encompassed better than one-third of the stated policy period of "01-01-90 to 07-01-90" as shown on the declarations page of the policy. CMIC received no premium for the use of that vehicle. It was not as though the decedent borrowed a friend's vehicle to run an errand, the type of random, occasional use of another's auto for which an insured or family member might reasonably expect to be insured and for which the insurer would reasonably expect to provide coverage.
In reliance upon the law applicable to the interpretation of insurance policies in general, the plaintiffs note that the phrase "furnished or available for your regular use" is not defined by the policy. According to the reasoning of the plaintiffs, that phrase is, therefore, open to interpretation, and that any reasonable interpretation of that expression that would provide coverage must be given effect. LeBlanc v. Aysenne, 05-0297 (La.1/19/06), 921 So.2d 85. While we agree with the general principle of the interpretation of insurance policy language set forth by the plaintiffs, we note that the key word in all of this is "reasonable." Moreover, in Brouillette v. Fireman's Fund Ins. Co., 163 So.2d 389 (La.App. 3 Cir.1964), cited by CMIC, the court specifically held that the exclusion is not ambiguous:
As to the latter contention-that the exclusion provision is ambiguous, the weight of authority is against the plaintiff's position. The exclusion from policy coverage of vehicles `furnished for the regular use' of a named insured (except of course for those listed as insured by the policy) has in Louisiana and elsewhere consistently been held to be an unambiguous exclusion under the ordinary meaning of the terms used, although the application of the exclusion is a question of fact, with no hard and fast rule established to determine such question, which depends upon an examination of the facts in each case according to the general criteria of the terms used.
Id., at p. 391. See also Romano v. Girlinghouse, 385 So.2d 352 (La.App. 1 Cir. 1980).
As we find that, based on the undisputed facts of this case, as a matter of law the decedent was driving an excluded vehicle furnished or available for her regular use, we find no error in the trial court's dismissal of the plaintiffs' claims against CMIC in its capacity as liability insurer.

II. UNINSURED MOTORIST COVERAGE
The UM provisions of the policy are found in Part C. The definitions section of the policy provides that:
A. Throughout this policy, "You" and "Your" refer to:
1. The "named insured" shown in the declarations; and
2. The spouse if a resident of the same household.
B. "We", "us", and "our" refer to the company providing this insurance.
* * *
J. Your covered "auto" means:
1. Any vehicle shown in the declarations.
The vehicle driven by the decedent is not a vehicle shown in the policy declarations. Therefore, CMIC argues that there is no UM coverage, citing Thomas v. Estate of Grunsten, 492 So.2d 201 (La.App. 4 *6 Cir.1986), and Branch v. O'Brien, 396 So.2d 1372 (La.App. 2 Cir.1981). However, the Thomas case does not involve UM coverage and the language in the policies at issue in that case as well as the facts are all so different from those of the instant case. Moreover, Branch holds the following:
Uninsured motorist coverage does not depend on use of a listed insured automobile, but is to protect the insured from damage caused by a negligent uninsured motorist regardless of whether the insured is occupying an automobile listed in the policy, another automobile owned or unowned, or is not occupying an automobile at all.
Id., at p. 1375.
Consistent with the holding in Branch that UM coverage "does not depend on use of a listed automobile," we note that there is no reference in CMIC's UM coverage provisions limiting it to "covered autos" where the insured or family members are involved. Instead the applicable policy provisions are as follows:
PART CUNINSURED MOTORISTS COVERAGE
INSURING AGREEMENT
A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":
1. Sustained by an "insured," and
2. Caused by an "accident."
* * * *
B. "Insured" as used in this Part means:
1. You or any "family member."
2. Any other person "occupying" "your covered auto."
* * * *
It is clear from the foregoing UM policy provision, that it is not necessary for "you" or a "family member" to be driving a "covered auto" in order to have UM coverage. The "covered auto" requirement under paragraph B2 of the INSURING AGREEMENT applies only to a person "other" than "you" or a "family member." "You" is defined to include a spouse, Mrs. Karp in this case, if residing with the named insured, Mr. Karp. "Family member" is defined in the policy "DEFINITIONS" as:
F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household....
Thus, Mrs. Karp could be entitled to UM coverage under the CMIC policy as Mr. Karp's spouse if she were found to be residing with him at the time of the accident. Additionally, both she and Benjamin could be entitled to UM coverage as Mr. Karp's "family members" under the CMIC policy if they were found to be residing with him at the time of the accident. But CMIC contends that at the time of the accident the decedent was not a "resident" of Edward Karp's household, and, therefore is not covered under the UM provisions of the policy.
Mr. Karp was in Indianapolis with the family automobile, the only automobile listed on the declarations page of the policy, at the time of the accident. He was scheduled to start a new job there on April 2, 1990, whereas his wife, the decedent, had been living in New Orleans with her parents since November of 1989 while Mr. Karp relocated his employment. Therefore, CMIC argues that she should be considered to be a resident of her parents' home where she was working two jobs while waiting to rejoin her husband.
We agree that if at the time of the accident the decedent was not a resident of *7 Mr. Karp's household she would not have UM coverage under the CMIC policy. However, we do not find that she was necessarily a non-resident of Mr. Karp's household in spite of the fact that she had been living with her parents for over four months at the time of the accident while Mr. Karp relocated his employment. CMIC cites Martin v. Willis, 584 So.2d 1192 (La.App. 2 Cir.1991), for the proposition that: "It is clear that a child need not be under his parents' roof at all times to be considered a resident of their household." Id., at p. 1194. Moreover, the Martin court goes on to state that: "Unlike domicile, one may have more than one residence." Id. CMIC also cites Fielding v. Casualty Reciprocal Exchange, 331 So.2d 186 (La.App. 3 Cir.1976), for the same proposition, but the facts in Fielding are unique and provide no useful factual standard for determining residency. However, because we agree with CMIC's contention that a party may have more than one residence, we find that a genuine issue of material fact exists as to whether the decedent was a resident of Mr. Karp's household in spite of the fact that she may have also been a resident of her parents' household at the time of the accident.
The separation of the decedent from her husband was always intended to be temporary. Even were this Court to concede for purposes of argument only that the decedent resided with her parents for a period of time sufficiently long to be considered to be a resident of their household, especially considering the parent child relationship, it does not alter the fact that at a trial on the merits a fact finder could reasonably find that the decedent was also at the same time a resident of her husband's household. The fact that the Karp family household was in a state of flux and transition because of Mr. Karp's relocation to Indiana for employment purposes does not mean that the Karps had no household as a family unit for insurance purposes or that Mrs. Karp ceased to be a member of her husband's household for insurance purposes. We do not find this to be a strained reading of the policy provisions under the circumstances. Moreover, we do not find that this reading in any way expands the scope of persons provided UM coverage beyond that contemplated by the policy language. In other words, were the fact finder to find the decedent to be a resident of both households, as a matter of law this interpretation of the term "resident" would not expand the risk beyond what CMIC can be presumed to have contemplated when it issued the policy. Under such circumstances it could come as no surprise to CMIC that it is providing UM coverage to the decedent, as it must always have been contemplated that the decedent, as Mr. Karp's spouse and family member, would be covered.
CMIC argues that there is no UM coverage for Benjamin Karp as such coverage is limited according to CMIC's UM brief to the "named insured or his spouse." However, based on the UM policy provisions quoted above, the policy unambiguously covers a "family member" of the named insured who is a resident of the named insured's household. Mr. Karp's son Benjamin is undeniably one of Mr. Karp's "family members" and as to the question of his residency, the same genuine issues of material fact exist as to Benjamin as we discussed immediately above in connection with the decedent, his mother.
Having concluded that genuine issues of material fact exist as to the residency of the decedent and her son, Benjamin, we must next determine the legal effect of the anti-stacking statute.
The trial court held that:
Because Mr. Karp, individually and on behalf of his minor son, has recovered *8 the UM benefits from the excess insurer, St. Paul Fire and Marine Insurance Company, the court concludes that no further benefits may be collected under the UM coverage of any other policy as a matter of the anti-stacking statute applicable at the time of this accident, Revised Statute 22:1406(D)(1)(c). Therefore, because Mrs. Leah Karp was driving a car owned by a resident relative, Mr. and Mrs. Goldman, her parents, she does not fall within the "anti-stacking" exception of paragraph Revised Statute 22:1406(D)(1)(c)(ii)[[1]] which would have allowed her to recover under one other UM policy in addition to the primary policy car involved in the accident.
La. R.S. 22:680(1)(c)(ii), (formerly La. R.S. 22:1406 D(1)(c)(ii)) provides that:
(ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the following priorities of recovery under uninsured motorist coverage shall apply:
(aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
UM coverage on the vehicle the decedent was driving was provided by St. Paul Fire and Marine Insurance Company and Pacific Indemnity. It appears that the plaintiffs have already collected UM and liability coverage from those insurers in excess of $3,000,000.00. If the vehicle occupied by the insured has more than one UM policy on it, all such policies are primary. Gray v. Farm Bureau Ins. Co., 99-0304 (La.App. 1 Cir. 3/31/00), 764 So.2d 1050. Therefore, both St. Paul Fire and Marine Insurance Company and Pacific Indemnity are primary insurers of the vehicle the decedent was driving and the plaintiffs' recovery from both does not raise a question of stacking as between St. Paul Fire and Marine and Pacific Indemnity. However, CMIC contends that to allow the plaintiffs to recover from it in addition to the recoveries already had from St. Paul Fire and Marine Insurance Company and Pacific Indemnity would violate the anti-stacking law.
La. R.S. 22:680(1)(c)(ii) would allow the plaintiffs to stack the CMIC policy, but only if they were not injured "while occupying an automobile not owned by said injured party, resident spouse, or resident relative." CMIC argues that as the decedent and her son were residents of her parents' home and were occupying a vehicle at the time of the accident owned by her parents, the plaintiffs cannot stack CMIC's UM coverage on top of the policy proceeds they have already collected from St. Paul Fire and Marine Insurance Company and Pacific Indemnity. However, as already stated in this opinion there is a genuine issue of material fact as to the residence of the decedent and her son.
CMIC next argues that: "[N]either Lea[h] Karp nor Benjamin Karp are `insured occupants' and no claim is permitted by statute as well as by the terms of CM's *9 policy." As La. R.S. 22:680(1)(c)(ii)(bb) refers to "injured occupants" not "insured occupants," and as both Leah Karp and Benjamin were "injured occupants," we find CMIC's argument unpersuasive.
Accordingly, we find that genuine issues of material fact exist concerning UM coverage for the decedent and her son Benjamin under the CMIC policy. Therefore, we are compelled to vacate the summary judgment granted in favor of CMIC in its capacity as UM insurer.

III. THE CROSS-CLAIM OF ST. PAUL FIRE & MARINE INSURANCE COMPANY
We note that the final argument presented in brief by CMIC in its UM capacity entitled, "The Cross-Claim of St. Paul Fire & Marine Insurance Company" raises an issue that is not before this Court as part of this appeal. Neither St. Paul Fire & Marine Insurance Company nor CMIC have filed appeals or answers to appeal. Therefore, we will not consider this issue.

DECREE
For the foregoing reasons, we hereby affirm the summary judgment in favor of CMIC in its capacity as liability insurer; we amend the judgment in part to vacate the summary judgment in favor of CMIC in its capacity as UM insurer, and remand the matter to the trial court for further proceedings consistent with this appeal. Both parties to bear their own costs.
AMENDED. AFFIRMED AS AMENDED, AND REMANDED.
MURRAY, J., dissents in part, concurs in part, and assigns reasons.
NOTES
[1] La. R.S. 22:1406 D(1)(c)(ii) was redesignated by Act 2003, No. 456, § 3, as La. R.S. 22:680(1)(c)(ii).